ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
brobbins@robbinsarroyo.com
KEVIN A. SEELY (199982)
kseely@robbinsarroyo.com
ASHLEY R. RIFKIN (246602)
arifkin@robbinsarroyo.com
LEONID KANDINOV (279650)
lkandinov@robbinsarroyo.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
rkshelquist@locklaw.com
REBECCA A. PETERSON (241858)
rapeterson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

Attorneys for Plaintiff David Poyet

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAVID POYET, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AVID LIFE MEDIA, INC. and AVID DATING LIFE, INC. d/b/a ASHLEY MADISON, <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT:** <br><br> **(1)FRAUD** <br> **(2) CALIFORNIA'S UNFAIR COMPETITION LAW (§§17200, *ET SEQ.*);** <br> **(3) CALIFORNIA'S FALSE ADVERTISING LAW (§§17500, *ET SEQ.*);** <br> **(4) NEGLIGENT MISREPRESENTATION** <br> **(5) UNJUST ENRICHMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff David Poyet ("Plaintiff"), individually and on behalf of all others similarly situated, files this class action against defendants Avid Life Media, Inc. and Avid Dating Life, Inc. d/b/a Ashley Madison (collectively, "Defendants"). Plaintiff states and alleges as follows upon information and belief, based upon, inter alia, investigations conducted by and through his attorneys, except as to those allegations pertaining to Plaintiff personally, which are alleged upon knowledge. Plaintiff invokes this Court's jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

## SUMMARY OF THE ACTION

1.    This case centers on Defendants' unfair and fraudulent business practices in an effort to increase their bottom line. Defendants operate the dating site AshleyMadison.com. AshleyMadison.com allegedly helps married individuals meet other people that are interested in having an affair. In fact, Ashley Madison's slogan is "Life is short. Have an Affair."

2.    Defendants knew that a material and critical consideration to a consumer choosing to join AshleyMadison.com and actually pay money to Defendants would be the likelihood of making a connection and having an affair. Therefore, most male consumers would need to believe they were communicating with actual women-not merely ghost accounts. Defendants were aware of this fact and thus repeatedly advertised that AshleyMadison.com was popular with both women and men. Indeed, Defendants' marketing and promotional materials emphasized that "it is one of the few dating sites that really clicks with women. According to statistics Chief Executive Officer ("CEO") Noel Biderman has trumpeted in the media, Ashley Madison enjoys an overall 70/30 gender split—with a 1:1 male/female ratio among the under-30 set."[1]

---

[1] *See* Caitlin Devey, *Ashely Madison Faked Female Profiles to Lure Men in, Hacked Data Suggest*, available online at https://www.washingtonpost.com/news/the-

CLASS ACTION COMPLAINT

3.     Defendants' statements were false.   In July 2015, hackers, calling themselves the "Impact Team," revealed that they downloaded AshleyMadison.com's users' personal information.   These hackers then released this information to the public in August 2015.   As a result, the public was finally able to see the genders of the users of AshleyMadison.com.   In fact, the data the hackers revealed shows that only 15% of the AshleyMadison.com's users were women.[2]

4.     The released information also showed that Ashley Madison went to extreme measures to fraudulently lure in and profit from customers.   Defendants fraudulent and deceitful actions include, but are not limited to:

- Marketing that the site had 5.5 million female profiles, when only a small percentage of the profiles belonged to actual women who used the site;

- Hiring employees whose jobs were to create thousands of fake female profiles; and

- Creating over 70,000 female bots to send male users millions of fake messages.

5.     Defendants' material misrepresentations and omissions fraudulently induced Plaintiff and the proposed class (the "Class") to pay for communications with fake profiles.   Specifically, members are charged "credits" for each communication they make with any profile—whether fake or an actual account.   Members directly submit payment to Defendants through the website to accumulate credits and so each communication costs Plaintiff and the Class actual dollar amounts.

6.     In short, Defendants did not only mislead in marketing and promoting the website, they purposefully induced members—like Plaintiff and the Class—to

intersect/wp/2015/08/25/ashley-madison-faked-female-profiles-to-lure-men-in-hacked-data-suggest/ (last viewed Oct. 23, 2015).

[2] *Id.*

CLASS ACTION COMPLAINT

1  engage with the fake profiles by sending out the initial communication to members.
2  This directly caused members to incur costs while believing it was an actual person
3  communicating with them.

4  **PARTIES**

5  7. Plaintiff David Poyet is a resident and citizen of Los Angeles, California.
6  Plaintiff has been a member of AshleyMadison.com since 2014. Plaintiff bought and
7  used credits from Defendants in order to talk with actual women on
8  AshleyMadison.com.

9  8. Defendant Avid Life Media, Inc. is a corporation organized and existing
10  under the laws of Ontario, Canada, with its principal place of business and
11  headquarters in Toronto, Canada. Defendant Avid Life Media, Inc. owns and operates
12  various companies that operate online dating websites including the website operated
13  under the trademark of Ashley Madison.

14  9. Defendant Avid Dating Life, Inc. d/b/a Ashley Madison is a corporation
15  organized and existing under the laws of Ontario, Canada, with its principal place of
16  business in Toronto, Canada. Defendant Avid Dating Life, Inc. owns and is regularly
17  engaged in the business of operating online dating websites, including
18  AshleyMadison.com.

19  **JURISDICTION AND VENUE**

20  10. This Court has jurisdiction over this action under 28 U.S.C. §1332(d),
21  because this is a class action in which: (i) the matter in controversy exceeds the sum
22  or value of $5,000,000, exclusive of interest and costs; (ii) members of the proposed
23  class are citizens of a State different from a defendant; and (iii) the number of Class
24  members is greater than 100.

25  11. Because a substantial portion of the wrongdoing alleged herein occurred
26  in California, the Court has personal jurisdiction over Defendants. Defendants also
27  have sufficient minimum contacts with California and have otherwise intentionally

28

CLASS ACTION COMPLAINT

avilied themselves of the markets in California through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this District under 28 U.S.C. §1391(b)(2) and (3) because: (i) a substantial part of the events or omissions giving rise to these claims occurred in this District; (ii) a substantial part of the property that is the subject of this action is situated in this District; and (iii) Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

13. AshleyMadison.com is owned by Avid Life Media, Inc., a privately-held Canadian corporation founded by its CEO Noel Biderman, which owns various companies in the business of operating online dating websites, including CougarLife.com and EstablishedMen.com.

14. Defendants operate AshleyMadison.com to facilitate sexual encounters for people who are married or are in committed relationships. Defendants market AshleyMadison.com with the slogan, "Life is short. Have an Affair" and target married/involved people for their matchmaking services. Defendants proclaim that "Ashley Madison is the most famous name in infidelity and married dating" and "the most successful website for finding an affair and cheating partners." Defendants represent that "[t]housands of cheating wives and cheating husbands sign up every day looking for an affair."

15. Ashley Madison's revenue model relies upon the purchase of "credits" by users that are used to interact with one another, as opposed to a subscription-based model. To initiate a conversation with another user, one must "pay" five credits. Users buy credits from the website and enter their credit or debit card information to buy credits. Various means of interacting with other users, such as having instant

- 4 -

messaging, online chats, or sending messages to prospective matches, cost different amounts of credits.

16.     Defendants focused their marketing on the availability of numerous female members to communicate with, including touting that:

- "Ashley Madison enjoys an overall 70/30 gender split — with a 1:1 male/female ratio among the under-30 set;"

- "Thousands of cheating wives and cheating husbands signup everyday looking for an affair;" and

- Ashley Madison had 5.5 million women members.

## THE TRUTH IS REVEALED

17.     On July 12, 2015, Defendants learned that their computer systems had been hacked by notification on each of their employees' internal computers greeting screen.  Included in the on-screen message was the statement that "[w]e have taken over all systems in your entire office and production domains, all customer information databases, source code repositories, financial records, emails."

18.     The hackers released the information they obtained to the public.  Based on this release, Defendants scheme of fake female profiles was revealed.

19.     For instance, it was reported by one individual that based on her analysis:

> [T]he more I examined those 5.5 million female profiles, the more obvious it became that ***none of them had ever talked to men on the site, or even used the site at all after creating a profile***.  Actually, scratch that.  As I'll explain below, there's a good chance that about 12,000 of the profiles out of millions belonged to actual, real women who were active users of Ashley Madison.[3]

---

[3] *See* Ashley Madison, *Almost None of the Women in the Ashley Madison Database Ever Used the Site*, available online at http://gizmodo.com/almost-none-of-the-women-in-the-ashley-madison-database-1725558944 (last viewed Oct. 23, 2015).

20.    Included in the released information was Defendants' computer code, including code from fake female robot profiles intended to interact with male customers. Comments in the code contain "a set of descriptions for how the engager bots should act" providing:

- Host bot mother creates engagers;
- Birth has been given! let the engager find itself a man!; and
- Randomizing start time so engagers don't all pop up at the same time for every single state that has guest males, we want to have a chat engager.

21.    Analysis and research into the internal information and the computer code has shown the true extent and deliberate fraud Defendants engaged in:

What I *have* learned from examining the site's source code is that Ashley Madison's army of fembots appears to have been a sophisticated, deliberate, and lucrative fraud. The code tells the story of a company trying to weave the illusion that women on the site are plentiful and eager.[4]

22.    This comprehensive scheme is further highlighted by the fact that Defendants had their fake accounts contact members over ***twenty million times***:



_____

[4] *See* Annalee Newitz, *Ashley Madison Code Shows More Women, and More Bots*, available online at http://gizmodo.com/ashley-madison-code-shows-more-women-and-more-bots-1727613924 (last viewed Oct. 23, 2015).

CLASS ACTION COMPLAINT

23.   The fake profiles not only initiated contact but would continue to communicate and encourage the users to purchase more credits to allow contact.  *Id.*

24.   Defendants took proactive steps to ensure that the fake profiles would further entice members by further misleading them into thinking it was a real person who would likely agree to meet them in the future.  Defendants had specific canned responses for any response by a male to an initial contact:

- "Hmmmm, when I was younger I used to sleep with my friend's boyfriends.  I guess old habits die hard although I could never sleep with their husbands."

- "I'm sexy, discreet, and always up for kinky chat.  Would also meet up in person if we get to know each other and think there might be a good connection.  Does this sound intriguing?"

25.   In the end, Defendants reaped in profits by defrauding Plaintiff and the Class and creating the impression and understanding that any experience on AshleyMadison.com would be a genuine exchange with real people.  Indeed, it has been disclosed that "20 million men out of 31 million received bot mail, and about 11 million of them were chatted up by an automated 'engager.'  And in the code, I discovered that for many members, these robo-encounters could come roughly every few minutes." *Id.*

## PLAINTIFF AND THE CLASS JUSTIFIABLY RELIED ON DEFENDANTS' STATEMENTS

26.   Plaintiff is an adult individual who reviewed and relied on Defendants' marketing, promotions and advertising.

27.   Plaintiff had no information or reason to believe Defendants were falsely marketing the presence of women accountholders on AshleyMadison.com.  These statements were specifically made to induce Plaintiff and the Class to purchase credits.

CLASS ACTION COMPLAINT

28.     Plaintiff reasonably relied on the statements presented as specific factual representations and percentages touted by Defendants to his detriment.

29.     Plaintiff further reasonably believed that any message he received from a female was an actual person looking to engage in communication.

30.     Had Plaintiff known that the women active on the website were grossly exaggerated, he would not have joined.  Further, had Plaintiff known that the female accounts contacting him were fake; he would not have paid the credits to engage in communication.

31.     Plaintiff and the class have suffered an injury and damages because of and caused by Defendants' fraudulent conduct.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

33.     Plaintiff seeks certification of the following nationwide classes (the "Nationwide Class"):

> All persons in the United States who, after September 11, 2012, were credit purchasing members of Defendants' website. The term "persons" includes individuals and profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

34.     Excluded from the Class are Defendants, their parent companies, subsidiaries, and affiliates; any co-conspirators; federal governmental entities and instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; and any judicial officer presiding over this matter and his or her staff.

CLASS ACTION COMPLAINT

35.     **Numerosity.** The Class comprises thousands or more of consumers throughout the nation.  The Class is so numerous that joinder of all members is impracticable.

36.     **Commonality and Predominance.** Common questions of law and fact exist as to Plaintiff and the Class and predominate over any questions that affect only individual Class members.  These common questions of law and fact include, without limitation:

(a)     the nature, scope and operations of the wrongful practices of Defendants;

(b)     whether Defendants engaged in a course of unfair, unlawful, fraudulent and/or deceptive conduct in utilizing fake profiles on their website;

(c)     whether Defendants knew or should have known their business practices were unfair and fraudulent;

(d)     whether California law governs the Nationwide Class claims;

(e)     whether Defendants owed a duty of care to Plaintiff and the Class;

(f)     whether Defendants made fraudulent and/or misleading representations of fact to consumers;

(g)     whether Defendants knew or should have known that their representations were fraudulent and/or misleading in connection with offering bonuses to consumers;

(h)     whether Defendants' fraudulent and deceptive conduct harmed Plaintiff and the Class; and

(i)     whether Defendants were unjustly enriched by their deceptive practices.

37.     **Typicality.** Plaintiff's claims are typical of the claims of Class members. Plaintiff and the Class sustained damages arising out of Defendants' common course

CLASS ACTION COMPLAINT

of conduct in violation of law, as described herein. The damages of each Class member were caused directly by Defendants' unlawful and deceptive conduct.

38.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class because they share common injuries as a result of Defendants' conduct that is common to all Class members. Plaintiff has no interest adverse to the interests of absent Class members.  Plaintiff has retained counsel with substantial experience and success in the prosecution of complex class action and consumer protection litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.

39.    **Superiority.** A class action is superior to other methods of fairly and efficiently adjudicating this litigation.  While not inconsequential, the damages as to any individual litigant are such that individual litigation is not feasible.  Furthermore, many Class members may not even be aware that they have claims.  Accordingly, for Class members, a class action is the only mechanism by which they could reasonably expect to vindicate their rights.

40.    The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications concerning the subject of this action.

41.    Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants, and further the efficient adjudication of Class member claims.

42.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

- 10 -

CLASS ACTION COMPLAINT

1

2

3

4

## CLAIMS FOR RELIEF

## COUNT I

### FRAUD
**(Brought on behalf of the Class)**

5
6
43.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

7
8
9
10
11
12
13
44.     As is fully alleged above, throughout the class period, Defendants knowingly made false misrepresentations and material omissions of fact. Specifically, Defendants misrepresented the truth about the number of active and actual female account holders on their website, AshelyMadison.com. Defendants also willfully failed to disclose that once a member an individual will likely be contacted by a fake profile created and ran by Defendants to ensure that Plaintiff and the Class members would purchase additional credits on the website.

14
15
16
17
18
19
20
21
45.     Defendants had superior and exclusive knowledge regarding the actual number of female active users on AshelyMadison.com. Defendants had exclusive knowledge on what accounts were fake profiles generating communications to Plaintiff and the Class. Failing to disclose and/or making material misrepresentations concerning this information to Plaintiff and the Class members rendered Defendants' transactions with Plaintiff and the Class members inherently unfair and fraudulent. Defendants therefore had a duty to disclose this information to Plaintiff and the Class members.

22
23
24
46.     Defendants' misrepresentations and omissions were made for the purpose of inducing Plaintiff and members of the Class to join their website and pay fees to Defendants to participate in communication with other account holders.

25
26
27
47.     Plaintiff and the Class members justifiably relied on Defendants' misrepresentations and omissions when they joined Defendants' website, payed fees to receive credits, and participated in communications with fake profiles.

28

CLASS ACTION COMPLAINT

48.     Defendants knew, or should have known, that likelihood and/or availability to engage in communications with actual females was a material fact inducing Plaintiff and the Class members to sign up.  Defendants own marketing campaign illustrates this knowledge as they emphasized the popularity of AshelyMadison.com with women.

49.     Plaintiff and the Class members would not have signed up for AshelyMadison.com, paid fees and participated in communications absent Defendants' misrepresentations and omissions regarding the fake female profiles and active female account holders.

50.     As a result of Defendants' fraudulent misrepresentations and omissions, Plaintiff and the Class members were induced into transactions that they otherwise would not have made and suffered financial injury, harm, and damages as described in this Complaint.

## COUNT II

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(California Business and Professions Code §§17200, *et seq.*)**
**(Brought on behalf of the Nationwide Class and the California Class)**

51.     Plaintiff realleges the foregoing paragraphs as is fully set forth herein.

52.     Plaintiff brings this claim on behalf of himself and the proposed Class.

53.     California Business and Professions Code §§17200, *et seq.* prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

54.     California Business and Professions Code §§17200, *et seq.* imposes strict liability.  Plaintiff does not have to prove Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent business acts or practices. Instead, Plaintiff only has to prove such acts or practices occurred.

CLASS ACTION COMPLAINT

55.     Defendants engaged in unlawful business acts and practices in violation of California Business and Professions Code §§17200, *et seq.* by engaging in unfair, unlawful and fraudulent business acts or practices as described herein, including but not limited to, failing to disclose (i) the true number of active female accounts on AshelyMadison.com; and (ii) when a member received communication from a fake profile.

56.     Defendants' practices are likely to deceive, and have deceived, members of the public.

57.     Defendants knew, or should have known, that their misrepresentations, omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

58.     Defendants continued to make such misrepresentations despite the fact they knew or should have known that their conduct was misleading and deceptive.

59.     By engaging in the above-described acts and practices, Defendants committed one or more acts of unfair competition within the meaning of Unfair Competition Law, California Business and Professions Code §§17200, *et seq.*

60.     Plaintiff reserves the right to identify additional provisions of law violated by Defendants as further investigation and discovery warrants.

61.     Defendants' misrepresentations, business practices and their false and misleading advertising regarding constitute "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.

62.     Defendants' misrepresentations, business practices and their false and misleading advertising constitute "fraudulent" business acts and practices because members of the consuming public, including Plaintiff and the Class members, were and are likely to be deceived thereby.

CLASS ACTION COMPLAINT

63.    The harm to Plaintiff and members of the public outweighs the utility, if any, of Defendants' acts and practices described above and therefore Defendants' acts and practices constitute an unfair business act or practice.

64.    Defendants' acts and practices have detrimentally impacted competition and caused substantial harm to Plaintiff, the Class members, and the consuming public.  Plaintiff and the Class members were misled and suffered injuries and lost money or property as a direct and proximate result of Defendants' unlawful business acts and practices.

65.    Defendants' knew or reasonably should have known their misleading business practices of misrepresenting the true number of active and actual female account holders and failing to disclose that once a member an individual will likely be contacted by a fake profile created and ran by Defendants were likely to deceive reasonable consumers.

66.    Defendants' misrepresentations and their false and misleading business practices present a continuing threat to consumers in that such advertising will continue to mislead consumers.

67.    By reason of the foregoing, Defendants should be required to pay damages and/or make restitution to Plaintiff and the Class Members and pay for Plaintiff's and the Class members' attorneys' fees.

## COUNT III

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**(California Business and Professions Code §§17500, *et seq.*)**
**(Brought on behalf of the Nationwide Class and the California Class)**

68.    Plaintiff realleges the foregoing paragraphs as is fully set forth herein.

69.    Plaintiff brings this claim on behalf of himself and the proposed Class.

70.    Defendants are disseminating advertising in California.

- 14 -

CLASS ACTION COMPLAINT

71.     California Business and Professions Code §§17500, *et seq.* provides that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

72.     When Defendants disseminated the advertising, they knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading, or omitted to state the truth about their services and related terms, in violation of the False Advertising Law, California Business and Professions Code §§17500, *et seq.*  Specifically, Defendants misrepresented the truth about the number of active and actual female account holders on their website, AshelyMadison.com and also willfully failed to disclose that once a member an individual will likely be contacted by a fake profile created and ran by Defendants. Both of which Defendants knew were likely to deceive reasonable consumers.

73.     Plaintiff and the Class members were misled and suffered injuries and lost money or property as a direct and proximate result of Defendants' misrepresentations and their false and misleading in violation of California Business & Professions Code §§17500, *et. seq.*

74.     As a result of Defendants' wrongful conduct, Plaintiff and the Class are entitled to restitution and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

75.     Pursuant to California Business and Professions Code §§17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining

CLASS ACTION COMPLAINT

Defendants from continuing to engage, use, or employ the above-described practices in advertising and marketing their services.

76.    Likewise, Plaintiff seeks an order requiring Defendants to make full corrective disclosures to correct their prior misrepresentations, omissions, failures to disclose, and partial disclosures.

77.    On information and belief, Defendants have failed and refused, and in the future will fail and refuse, to cease their deceptive advertising practices, and will continue to do those acts unless this Court orders Defendants to cease and desist pursuant to California Business and Professions Code §17535.

78.    Plaintiff, individually and on behalf of the Class, seek restitution, disgorgement, injunctive relief, and all other relief allowable under California Business and Professions Code §§17500, *et seq*.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

79.    Plaintiff realleges the foregoing paragraphs as is fully set forth herein.

80.    Plaintiff brings this claim on behalf of himself and the proposed Class.

81.    Defendants had a duty to disclose to Plaintiff and the Class members that their employees were running numerous fake female profiles and the actual number of active female accounts was materially less than represented by Defendants. Likewise, Defendants had a duty to disclose when it was one of the fake profiles contacting a member of AshleyMadison.com.

82.    Defendants negligently and/or carelessly misrepresented, omitted and concealed from consumers material facts relating to AshleyMadison.com.

83.    These misrepresentations and omissions were material and concerned the specific information that a reasonable consumer would consider in choosing to join, pay fees and participate in communications on AshleyMadison.com.

CLASS ACTION COMPLAINT

84.     As a result of Defendants' misstatements and omissions, they were under a duty to disclose the additional facts necessary to avoid any misrepresentation or confusion.  Further, Defendants knew of their misrepresentations and omissions.

85.     At the time failed to disclose, conceal, suppress and/or omitted material information, Defendants knew, or by the exercise of reasonable care should have known, that the statements were false and misleading to reasonable consumers.

86.     Plaintiff and Class members justifiably relied upon Defendants' misrepresentations and omissions.  Plaintiff and Class members were unaware of the falsity of Defendants' misrepresentations and omissions and, as a result, justifiably relied on them in participating in the online fantasy sports offered by Defendants. Had Plaintiff and Class members been aware of the truth, they would not have joined, paid fees or participated in communications on AshleyMadison.com.

87.     As a direct and proximate result of Defendants' misrepresentations and omissions of material fact, Plaintiff and Class members have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

**COUNT V**

**UNJUST ENRICHMENT**

88.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

89.     Defendants have benefitted and been enriched from their unlawful acts by accepting the benefit conferred by Plaintiff and the Class members.

90.     It would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the fees paid by Plaintiff and the Class members to Defendants.

91.     Defendants' ill-gotten gains were at the expense of Plaintiff and the Class members.

CLASS ACTION COMPLAINT

92.   It is against equity and good conscience to permit Defendants to retain their ill-gotten profits.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Class, prays for judgment and relief against Defendants as follows:

A.   for an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.   for a declaratory judgment and injunction prohibiting the use of undisclosed fake profiles on Defendants' website;

C.   for an order awarding, as appropriate, damages, restitution, and/or disgorgement to Plaintiff and the Class members, including all damages to which Plaintiff and the Class are entitled to under California law, and all other statutory penalties.

D.   for an order awarding attorneys' fees and costs to which Plaintiff and the Class;

E.   for an order awarding punitive damages;

F.   for an order awarding pre-judgment and post-judgment interest; and

G.   for an order providing such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 29, 2015        ROBBINS ARROYO LLP

                               s/Brian J. Robbins
                               BRIAN J. ROBBINS
                               brobbins@robbinsarroyo.com
                               KEVIN A. SEELY
                               kseely@robbinsarroyo.com
                               ASHLEY R. RIFKIN
                               arifkin@robbinsarroyo.com
                               LEONID KANDINOV
                               lkandinov@robbinsarroyo.com

- 18 -

CLASS ACTION COMPLAINT

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
rkshelquist@locklaw.com
REBECCA A. PETERSON
rapeterson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

CUNEO GILBERT & LADUCA, LLP
Charles J. LaDuca
charles@cuneolaw.com
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: (240) 483-4292
Facsimile: (202) 789-1813

Attorneys for Plaintiff David Poyet

1061103

- 19 -

CLASS ACTION COMPLAINT